FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 2 2 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANNY WILLIAMS, )
   PLAINTIFF ) CASE NO:
VS. ) 1:04-cv-1844-JEC
 )
RAY STANELLE, et.al., ) 42 U.S.C. § 1983
   DEFENDANTS )

## AMENDED COMPLAINT

Comes now Danny Williams, plaintiff pro-se in the above-styled action, and amends the complaint as follows:

## INCORPORATION OF ORIGINAL COMPLAINT

Williams realleges and incorporates by reference all allegations contained in the original complaint as if fully restated herein.

## FACTS

(12)

Mr. Battle and Mr. Donald have subjected Bostick prisoners, including me, to MRSA/Staph bacteria. The infection/disease has increased since the overcrowding and subsequent decreased sanitation. This has caused pimple-like sores that ooze infection and blood and leave visible scars, and has subjected us to toxic shock and death. I have approximately 12 scars on my face from the disease. On 08-27-04, I notified the Department of Health of the situation. I also notified the FBI of Mr. Battle's refusal to have the fingerprint cards completed for my 556-73 packet requesting records, and

1

notified operational investigations of a breach of security at Bostick. I also had Ms. Wright contact Regional Director Dipetro and GDC Chaplain Hudson about Mr. Battle's refusal to allow us to marry. Mr. Dipetro advised Ms. Wright and Mr. Battle that the marriage was approved and a wedding date was divinely set for September 8, 2004, with Justice of the Peace Karen Jackson scheduled to perform the wedding. On September 3, 2004, briefing was completed in Williams v. Upton, 04-10096-JJ, 11th Circuit, which currently involves GDC officials' retaliatory transfers, among other things. On September 7, 2004, the day before the marriage, Mr. Battle had 2 officers transfer me directly to Hancock State Prison, although the GDC had cancelled all transfers, even medical transfers, because of the weather. Ms. Wright and I were unable to marry as a result. Mr. Donald was notified, to no avail. Staff refuse to provide a response to the grievance filed on this issue.

(13)

On September 8, 2004, Ms. Wright and I contacted Hancock Warden Victor Walker about the marriage and were advised to resubmit documentation, which we did. Mr. Dipetro and Mr. Hudson were again contacted. The wedding was again scheduled, this time for September 17, 2004. on July 30, 2004, service of process had been ordered in Williams v. Donald, 5:01-cv-292-2, M.D. Ga., which was originally Williams v. Chatman and was remanded from the 11th Circuit to the District Court. Mr. Walker and Mr. Donald are defendants. When I arrived at Hancock on September 7, 2004, I was assigned to the disciplinary building and placed in a cell with a known thief and troublemaker. I have been medium security since 1998. Hancock is a close security

2

Ferrero, and Mr. Adams have been notified, to no avail. The grievance on this issue was denied at all levels.

(15)

The defendants refuse to provide a diet in compliance with the dietary laws of the Bible and my religion, while providing religious diets for other religions. Not only does the Bible prohibit the eating of pork, but it also prohibits the eating of blood, fat, and innards of animals. This results in a Biblical prohibition against eating processed meats, as they are made by the grindings, blending, and forming of the fat, blood, and inner organs of animals. The defendants are aware of my religion, and the violation of my religious beliefs by forcing me to eat processed meats, and refuse to provide a nutritional diet in compliance with my religion. Mr. Battle, Mr. Donald, Mr. Ferrero, and Mr. Adams have been notified to no avail. The grievance on this issue was denied at all levels.

(16)

Defendants Donald, Ferrero, and Adams refuse to provide celling arrangements in compliance with the tenets of my Christianity religion and the teachings of the Bible. The defendants utilize a policy of forced integrated celling with a sadistic motive to deny religious exercise, religious practice, and safety. Prisoners are celled together with no concern of age, race, religion, or disciplinary status. However, the defendants provide celling arrangements for select prisoners, particularly Muslims and homosexuals. No inquiry is made as to whether prisoners can cell together, they are just forcibly celled together, creating volatile situations to the satisfaction of the defendants' sadistic desires and routinely resulting in violence, theft, and suppression of religious exercise. Forced

4

integrated celling is not supported by the federal bureau of prisoners, the American correctional association, or the majority of other state corrections departments. Forced integrated celling prevents prisoners from adhering to the tenets of their religion and serves no legitimate penal interest, especially since select prisoners are not subjected to the practice. Mr. Donald, Mr. Ferrero, and Mr. Adams have been notified of the sincerely held religious beliefs regarding forced integrated celling, to no avail. The grievance on this issue was denied at all levels.

(17)

The center for disease control (CDC) has notified Mr. Donald of the susceptibility of Georgia prisoners to contract Hepatitis, and has requested that all prisoners be vaccinated for Hepatitis A and B, and tested for Hepatitis C, with treatment if positive. Mr. Donald, with knowledge that Georgia prisons are "incubators for the disease", refuses to provide the vaccinations and testing, with knowledge that Hepatitis is a serious disease and could result in severe medical problems and death of Georgia prisoners. The indifference to prisoners health needs is motivated by the cost of the vaccinations, testing, and probable need for treatment. I have requested vaccinations and testing, and have contacted Mr. Donald, Mr. Ferrero, and Mr. Adams, to no avail. The grievance on this issue was denied at all levels.

(18)

The defendants have a mutual understanding between themselves and other GDC staff to impede prisoners access to the courts by hindering the availability of the grievance process. On June 1, 2004, all grievances were administratively closed. The

defendants then invoked an informal grievance process which must be completed before the formal grievance process. I have submitted several informal grievances and never received a response, which prevented me from utilizing the formal grievance process. Also, since June 1, 2004, counselors are rarely available to turn grievances through the mail system. Staff routinely say that they never received the grievances. These tactics are being used to allow the defendants to allege non-exhaustion in litigation in hopes of stalling or having dismissed actions against them. I have also sought to exhaust remedies through habeas corpus concerning disciplinary action, but was inclined to withdraw the action because of the escalated retaliation, including denial of marriage, imposed immediately after filing. In issue 9 of the original complaint in this action, I relayed the fact that I had exhausted the informal grievance process and had requested access to the formal grievance process, which was not provided. Since that time, I obtained and filed a formal grievance, but never received a response. All issues of this case have been exhausted to the extent available. Some have been processed through each stage of the grievance procedure, some have been submitted through the informal procedure with no response, and some have been processed through the informal, submitted through the formal, and no response thereafter.

## CAUSES OF ACTION

(1)

The seizure of Williams' legal, religious, and writing materials by defendant Griffin was motivated by retaliation for Williams' exercise of his rights to access the courts, practice his religion, and communicate with family, friends, attorneys, and the media, in violation of the 1st Amendment. The seizure prevented Williams from adequately litigating his pending cases, publishing his articles, practicing his religion, and communicating with family, friends, attorneys, and the media, in violation of the 1st Amendment. Also, the failure of defendants Battle, Adams, and Ferrero to take action to protect Williams' rights violated the 1st Amendment. Further, the defendants' actions and inactions violated Williams' rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000 cc- (a), and the deprivation of Williams' property, without due process, violated the 14th Amendment.

(2)

The instruction by defendants Silvia and Stanelle to issue Williams a disciplinary report was motivated by retaliation for Williams' exercise of his rights, in violation of the 1st Amendment. The failure of defendants Battle, Adams, and Ferrero to take action to protect Williams' rights violated the 1st Amendment. Also, the procedures used to charge Williams with contraband possession denied Williams his 14th Amendment right to due process.

(7)

The actions and inactions of defendants Battle and Donald in subjecting Williams to inadequate fire protection, with knowledge of the risks and inhumanities associated, violated Williams' 8th Amendment rights.

(8)

The actions and inactions of defendants Battle and Donald in subjecting Williams to extreme noise levels and inability to sleep, with knowledge of the risks and inhumanities associated, violated Williams' 8th Amendment rights.

(9)

The actions and inactions of defendants Silvia, Stanelle, and Battle in refusing Williams visitation and interfering with Williams marriage violated Williams' 1st, 8th, and 14th Amendment rights. The marriage approval/disapproval process utilized by defendant Battle violated the 1st, 8th, and 14th Amendment. The procedures used to charge Williams with lying were in violation of Williams' 14th Amendment rights.

(10)

Defendants Stanelle, Silvia, Battle, Griffin, Clark, Hall, Donald, Ferrero, and Adams, with knowledge of the violations previously stated, and with a mutual understanding between them and previous defendants to retaliate against Williams and deny Williams equal treatment because of the exercise of his rights, violated Williams' 1st, 8th, and 14th Amendment rights. The actions and inactions also violate the Rockateer Influenced Corrupt Organization Act (RICO), 28 U.S.C. 241, and 42 U.S.C. 1985.

violated Williams' 1st, 8th, and 14th Amendment rights, 28 U.S.C. 241, and 42 U.S.C. 1985.

(14)

The seizure of Williams' religious materials and refusal to return them by defendants Silvia and Stanelle infringes on Williams' 1st Amendment free exercise rights. The option of utilizing the defendants' materials or no materials violates the establishment clause of the 1st Amendment. The failure of defendants Battle, Donald, Ferrero, and Adams to take action to protect Williams' rights violates the 1st Amendment. These actions and inactions also violate Williams' rights under the RLUIPA.

(15)

The denial by defendants Battle, Donald, Ferrero, and Adams of a diet in compliance religious diet for other religious, violates Williams free exercise of his religion in violation of the 1st Amendment and the RLUIPA and Williams right to equal treatment under the 14th Amendment.

(16)

The refusal by defendants Donald, Ferrero, and Adams to provide celling arrangements in compliance with Williams' religion, while providing celling arrangements for other prisoners and religions, with knowledge of the risks associated with forced integrated celling, violated Williams' right to free exercise of his religion under the 1st Amendment and RLUIPA, right to equal treatment under the 14th Amendment, and right to be free from cruel and unusual punishment under the 8th Amendment.

11

(17)

The refusal by defendants Donald, Ferrero, and Adams to provide Hepatitis vaccinations and testing, with knowledge of the risks and inhumanities associated, violated Williams' 8th Amendment rights. This also subjects society to unnecessary disease.

(18)

The defendants' conspiracy to impede and deny prisoners access to the courts by hindering the exhaustion processes violated Williams' right to due process under the 14th Amendment and subjects his cases to injury in violation of the 1st Amendment, and violates 28 U.S.C. 241, and 42 U.S.C. 1985.

(19)

The totality of the multiple conditions imposed on Williams by the defendants adds up to create an overall effect of cruel and unusual punishment, in violation of Williams' right under the 8th Amendment.

Executed this \_\_\_21st\_\_\_ day of \_\_\_October\_\_\_, 2004.

*Danny Williams*

Danny Williams
GDC 308471
Smith State Prison
P.O. Box 726
Glennville, Ga. 30427

I declare under penalty of perjury

That the foregoing is true and

correct.

This \_\_\_21st\_\_\_ day of \_\_\_October\_\_\_, 2004.

*Danny Williams*

Danny Williams

13