IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DANNY WILLIAMS,

          Plaintiff

     VS.

RAY STANELLE, *et al.*,

         Defendants

NO. 5:04-CV-417 (CAR)

PROCEEDINGS UNDER 42 U.S.C. § 1983
BEFORE THE U. S. MAGISTRATE JUDGE

## RECOMMENDATION

Plaintiff DANNY WILLIAMS has filed the above-captioned action alleging that (1) defendant LT. GRIFFIN wrongfully confiscated the plaintiff's personal property which included legal and religious materials; (2) defendants RAY STANELLE and DOUG SILVIA retaliated against the plaintiff for exercising his right to free speech; (3) defendant LT. CLARK denied the plaintiff due process by not allowing him to present evidence during a disciplinary hearing; and (4) defendant GARY HALL was deliberately indifferent to the plaintiff's medical needs.[1]

Before the court is a Motion for Summary Judgment filed by the above-named defendants (Tab #28), which is supported by a brief (Tab #33) and a Statement of Undisputed Material Facts (Tab #29).  The plaintiff has filed a response to the motion (Tab #38) and a Statement of Disputed Material Facts (Tab #39), as well as an affidavit in opposition (Tab #40).  Plaintiff WILLIAMS' deposition is also in the record.  Tab #36.

---

[1]There are additional claims in this case regarding Warden RALPH BATTLE, but he has filed a separate motion for summary judgment (Tab #55). Those claims will be dealt with in another recommendation.

## Summary Judgment Standard

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); **Warrior Tombigbee Transportation Co. v. M/V Nan Fung**,* 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See **Van T. Junkins & Assoc. v. U.S. Industries, Inc.**,* 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## 1. WRONGFUL CONFISCATION
### A. Retaliation
### FACTS

Plaintiff WILLIAMS claims that defendant GRIFFIN took the plaintiff's personal property from him in retaliation for his filing of lawsuits and grievances.  In the light most favorable to the plaintiff, when the plaintiff was transferred into Bostick State Prison (Bostick) on September 11, 2003, his property was inventoried, and it was determined that all of the plaintiff's materials would not fit into the area designated for inmates' personal property.  At this point defendant GRIFFIN, a lieutenant in the prison, was called in.  Upon reading through some of the materials — legal documents relating to cases pending in federal court and articles written by the plaintiff for publication — GRIFFIN "snapped" and started throwing papers, cursing, and saying that plaintiff "wasn't going to have [those materials] in that prison."  Williams Deposition at 11 (hereafter Pl. Dep. at __).  Even though some of WILLIAMS' personal property would have fit in the designated area, the guards seized all of his paperwork.  On October 23, 2003, defendants STANELLE and SILVIA returned some of the plaintiff's property — materials selected by them — to him.  As late as January of 2006, some of plaintiff's materials had still not been returned to him.  Pl. Dep. at ¶¶ 21 & 22.

3

DISCUSSION

In his briefs, defendant GRIFFIN has focused solely on whether the plaintiff's ability to either litigate his pending legal cases or practice his religion was infringed upon when his materials were confiscated, but that is only a part of the plaintiff's claim.  Plaintiff Williams also alleges that these materials were taken from him in retaliation for his filing of grievances and lawsuits.  Even if otherwise within the bounds of the Constitution, an action taken in retaliation for an inmate's filing of lawsuits or grievances violates both the inmate's right to access the courts and the inmates First Amendment right to free speech. *Wright v. Newsome*, 795 F.2d 964 (11ᵗʰ Cir. 1986).

In the view of the undersigned, plaintiff has alleged sufficient actions and motive of retaliation by LT. GRIFFIN to survive summary judgment, and LT. GRIFFIN has failed to rebut those allegations.  Since there are facts in dispute with respect to the reason for the confiscation of *all* of the plaintiff's materials (as opposed to only those materials that would not fit in the designated area), summary judgment is inappropriate with respect to this issue.

Accordingly, IT IS RECOMMENDED that defendant GRIFFIN's motion for summary judgment be DENIED as to the plaintiff's claim of retaliation.   Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

### B. Impediments to Litigation and Practicing Religion

FACTS

Among the documents LT. GRIFFIN is alleged to have confiscated were papers relating to two legal cases: the plaintiff's habeas corpus proceeding, *Williams v. Upton,* and an Eighth Amendment claim in *Williams v. Wetherington*.  The magistrate judge in *Upton* had recommended that that case be dismissed as untimely on September 9, 2003, but the plaintiff would not receive that recommendation until September 16th and was forced to file his objection to the recommendation

4

without some of his materials relating to that case. *Upton* was dismissed on December 5, 2003. Though the plaintiff had time to prepare his case in *Wetherington*, not having access to his materials hindered his ability to conduct discovery with respect to one of the plaintiffs and to respond to another of the defendants' motions for summary judgment which was later granted. Pl. Dep. at ¶11.

Plaintiff WILLIAMS also had in his possession materials relating to his religion, The Church of Jesus Christ Christian, as well as reading materials for a correspondence course the plaintiff was taking with the American Institute of Theology. Although the plaintiff disputes this fact (*see* Pl. Dep. at ¶13), the undersigned takes notice that both The Church of Jesus Christ Christian and the American Institute of Theology promote racial hatred.[2] While plaintiff avers that none of his materials promoted hatred, the defendants have provided copies of two of the confiscated materials, both of the which have "Church of Jesus Christ Christian" and "Aryan Nations" printed on their covers. The materials are entitled *Aryan Warrior* and *Calling Our Nation,* the latter of which portrays a swastika prominently on its cover. Defendant Exh. 2 at 729-30. At his deposition, plaintiff WILLIAMS could neither confirm nor deny that the specific materials in the file were in his possession. Pl. Dep. at 57.

DISCUSSION

A prisoner's ability to access the courts is clearly established (***Lewis v. Casey***, 518 U.S. 343 (1996)), and the Eleventh Circuit has held that "[T]he confiscation of legal materials may deny a prisoner access to the courts." ***Thomas v. Evans***, 880 F.2d 1235, 1242 (11th Cir. 1989). In order to

---

[2] The first document to arise from a simple Google search for the term "church of jesus christ christian" is "Aryan Nations: Official Website," from which the following is taken: "WE BELIEVE that the Cananite Jew is the natural enemy of our Aryan (White) Race. This is attested by scripture and all secular history. The Jew is like a destroying virus that attacks our racial body to destroy our Aryan culture and the purity of our Race." *Aryan Nations Official Website* (visited August 11, 2006) <www.twelvearyannations.com>. Meanwhile, a Google search for the term "American Institute of Theology" leads a browser to Kingdom Identity Ministries, from which the following is taken: "WE BELIEVE in an existing being known as the Devil or Satan and called the Serpent, who has a literal 'seed' or posterity in the earth commonly called Jews today." *Doctrinal Statement - Christian Identity, White Race, Christian Right, Christian Patriot, Nationalism, Conservative, Seedline* (visited August 11, 2006) <http://www.kingidentity.com/doctrine.htm>.

find a constitutional violation, the denial of court access must involve an actual injury that is more than "just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. An official's confiscation of **all** of an inmate's legal materials because **some** of them might not fit in a designated inmate storage area could effectively preclude the inmate from having access to the courts. If the constitution afforded officials that kind of power, any time an inmate involved in a lawsuit received a piece of mail that put him over the limit as to personal property, a guard would have the authority to confiscate **all** of the plaintiff's legal material and make it virtually impossible for the inmate to litigate a case.

In the view of the undersigned, a jury could find that by confiscating ***all*** of plaintiff's materials, defendant GRIFFIN denied the plaintiff's right of access to the courts; therefore, summary judgment cannot be granted to the extent that the plaintiff alleges a deprivation of that constitutional right. In addition, since denial of access to courts is a clearly established constitutional violation, qualified immunity is not available.

Since the plaintiff's religions materials clearly promote racial and ethnic hatred, those materials were contraband, and the defendants had every right to confiscate them and not return them. With respect to the plaintiff's alleged denial of the right to practice his religion, the defendants are entitled to summary judgment.

As to the plaintiff's materials for publication, there does not appear to be any established constitutional right for an inmate to publish; therefore, the alleged wrongful confiscation of the plaintiff's materials for publication should be viewed only as the confiscation pertains to the alleged retaliation, as it would if any other piece of property were wrongfully confiscated.[3]

---

[3]*See e.g.* **Hall v. Sutton**, 755 F.2d 786 (11th Cir. 1985) where an inmate's allegation that a prison official confiscated his tennis shoes out of retaliation for a prior suit implicated the inmate's right to meaningful access to the courts.

In light of the above, IT IS RECOMMENDED that the defendants' motion for summary judgment be GRANTED with respect to defendant GRIFFIN's confiscation of materials relating to the plaintiff's religion and the plaintiff's materials for publication, but DENIED with respect to the plaintiff's claims that defendant GRIFFIN denied plaintiff access to the courts.   Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

## 2. RETALIATION: Defendants STANELLE and SILVIA

### FACTS

In the light most favorable to the plaintiff:  on September 22, 2003, after discussing an incident  that had occurred at a different prison in 1999 in which plaintiff WILLIAMS had been exonerated after a disciplinary hearing involving defendant STANELLE, defendants STANELLE and SILVIA told Officer Stanley[4] to write up the plaintiff for lying about the contents of his materials and possession of contraband, including having materials advocating religious hatred.  The plaintiff does not deny what he had in his possession,[5] but does deny whether he lied when he told a guard that he only had legal materials in his personal property.  When questioned about the truthfulness of his statements at his deposition, the plaintiff's answer was that all of the materials — including his religious materials — *became* legal when he filed a grievance.  Pl. Dep. at 49.

---

[4] Officer Stanley is not a defendant in this case

[5] The plaintiff does contend that his materials from the Church of Jesus Christ Christian and the American Institute of Theology do not promote religious hatred.

DISCUSSION

Plaintiff WILLIAMS does not refute that he had in his possession religious materials that have been identified as contraband, and there is sufficient evidence in the record that the plaintiff's response to the guards' inquiries about the contents of his property was less than truthful.  It thus appears to the undersigned that defendants were entirely within their right to report the plaintiff for both possession of contraband and lying to prison officers.  Furthermore, plaintiff has not established any motive for the alleged retaliation other than that the plaintiff had prevailed in a hearing some five years prior to the alleged retaliatory actions by defendants STANELLE and SILVIA, and he has provided no evidence that the defendants' actions were not independently justified.  In order for a retaliation claim to survive summary judgment, the plaintiff must put forth some evidence other conclusory allegations. *See **Harris v. Ostrout***, 65 F.3d 912 (11th Cir. 1995).  The plaintiff has failed to do so in this case.

Accordingly, IT IS RECOMMENDED that the defendants' motion for summary judgment be GRANTED as to defendants STANELLE and SILVIA on this claim.   Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

**3. DUE PROCESS**

FACTS

Plaintiff contends that his due process rights were violated at his disciplinary hearing when defendant CLARK relied on only the statements of thirteen of the twenty witnesses the plaintiff wished to be called.

DISCUSSION

"[The Supreme] Court has set forth minimum requirements of procedural due process which should be accorded prisoners: (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals. ***Young v. Jones***, 37 F.3d 1457, 1459-60 (11th Cir. 1994) (citing ***Wolff v. McDonnell***, 418 U.S. 539 (1974)).

In the present case, the only dispute is to the last prong of the *Wolff* test. The exhibits provided by the defendants show the signature of plaintiff WILLIAMS on an Inmate Rights Statement where he declined representation and listed the names of the thirteen witnesses upon which defendant CLARK relied in making his determination. Additionally, the plaintiff submitted his own witness statement in his defense. Since the plaintiff was not denied his right to have witness testimony or documentary evidence, there was no denial of due process in his disciplinary proceeding.

Accordingly, IT IS RECOMMENDED that the defendants' motion for summary judgment be GRANTED with respect to the plaintiff's due process claims. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

## 4. DELIBERATE INDIFFERENCE

FACTS

In the light most favorable to the plaintiff, the facts are as follows: The plaintiff was taken from Bostick State Prison (Bostick) to Augusta State Medical Prison (ASMP) for surgery which was performed on February 20, 2004.  On February 23, 2004, the plaintiff was returned to Bostick, where his bed wedge and inhaler device, both of which had been previously prescribed for him for some time, had been removed from his cell.  The plaintiff does not allege any harm coming from the denial of the inhaler device for his asthma.  Dr. HALL took away the plaintiff's profile for the bed wedge, but reinstated it within a week; after the reinstatement, it took another week for the plaintiff to actually receive the wedge.  During that time, WILLIAMS was forced to improvise to keep his head elevated while in bed, but still had trouble sleeping and had acid backing up in his throat.

Additionally,  after his surgery, plaintiff WILLIAMS was not given the pain medication that had been prescribed by the surgeon. The record indicates that Tylenol was available to the plaintiff at all times while at Bostick and that although Dr. HALL ordered Percogesic (a pain killer) for the plaintiff on March 1st ,  plaintiff did not receive the prescription pain killer.

WILLIAMS also alleges that Dr. HALL delayed the plaintiff's follow-up with Dr. Terrace and further alleges that the delay was done in retaliation for another suit the plaintiff had filed.

DISCUSSION

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . .  proscribed by the Eighth Amendment."  429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, *rehearing denied* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1976).   Over the last thirty years, the Eleventh Circuit has refined *Estelle*:

Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. To show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. In addition, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference. *Salas v. Tillman*, 162 Fed.Appx. 918, 921 (11th Cir. 2006) (internal citations and punctuation omitted).

Plaintiff WILLIAMS has not demonstrated that he had a medical need that posed a substantial risk of serious harm or that any delay in treatment was anything other than accidental. The only possible claim the plaintiff states concerns the delay in receiving pain medication and his bed wedge's being taken from him.  However, within a week of the plaintiff's being denied the medication and the bed wedge, Dr. HALL remedied those problems to the best of his ability.

As to the plaintiff's claim that Dr. HALL purposefully delayed the plaintiff's follow-up appointment with Dr. Terrace, the plaintiff has provided nothing more than speculation as to the cause or motive behind any delay.

Accordingly, IT IS RECOMMENDED that the defendants' motion for summary judgment be GRANTED with respect to the plaintiff's claims against defendant DR. HALL.  Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

11

SO RECOMMENDED this 7th day of SEPTEMBER, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE